[No. 1127. February 27, 1907.]

THE TERRITORY OF NEW MEXICO, Appellant, v. JOHN MILLS, et al, Appellee.

Appeal from the District Court for Eddy County, before WILLIAM H. POPE, Associate Justice.  Reversed and remanded.

W. C. REID, Attorney General, for Appellant.

The offense need not be described in an appearance bond with that particularity required in an indictment. 5 Cyc. page 98; Chase v. The People, 2 Colorado 528; State v. Merrihew, 47 Iowa 112; State v. Marshall, 21 Iowa 143; Willard, Daniels et al v. The People, 6 Mich. 380.

W. W. GATEWOOD, for Appellees.

In order for a bail bond to be valid it must either set out the essential elements of an offense or set out an offense eo nomine.    People v. Sloper, 1   Idaho   158; Belt v. Spaulding (Ore.) 20 Pac. 827; People v. Baughman, 18 Ills. 152; State v. Cotton, 6 Tex. 425; Jesse Stansel v. State, 6 Tex. App. 460; 3 Enc. of Plead. & Prac. 221, 223, 225; Montgomery v. State, 33 Texas 179; O'Bannon v. State, 9 Texas App. 465; Cresap v. State, 13 S. W. 992; U. S. v. McCormick, 1 Cranch C. C. 593; Gee Wo v. State, 53 N. W. 53; People v. Pierce, 11 Hun. 633; C. L. 1897, sec. 3422; State v. May, 1 Burr 160; Nicholson v. Georgia, 2 Ga. 363; Dailey v. State, 4 Tex. 417; Morris v. The State, 4 Texas Court of Appeals 554; State v. Hall, 27 Texas 333; Fassett v. The State, Texas App. 40; White's Criminal Procedure 187.

A complaint on a forfeited appearance bond which does not show that such bond was entered into before a court or officer authorized to take such bond, fails to

state a cause of action. Compiled Laws, sections 3386, 3394, 3400, 3433 and 3435; Am. & Eng. Enc. of Law, vol. 3, pages 658-660, 668 and notes; Enc. Plead. & Prac. vol. 3, pages 198 and 217; Lindley v. The State, 17 Texas 120; Cushman v. The State, 38 Texas 181; Davis v. The State, 43 N. H. 600; State v. Patterson, 66 Tenn. (7 Baxt.) 246; State v. Patterson, 23 Ark. 541; Hogan v. State, 23 Ark. 637; Rupert et al v. People, 38 Pac. 702; Huston v. People, 55 Pac. 262; Blackman v. State, 21 Ind. 556; Myers v. State, 19 Ind. 127; U. S. v Keiver, 56 Fed. 424; State v. Smith, 31 Maine 469; Griffin v. State, 48 Ind. 258; State v. Arledge, 34 Tenn. 299; State v. Winninger, 81 Ind. 51; State v. McGrath, 31 Me. 469; State v. Wonnell, 33 Me. 200; Hawkins v. The State, 24 Ind. 288; Hannum v. State, 38 Ind. 32; State v. Walker, 1 Mo. 546; State v. Davis, 43 N. H. 600; Andress v. State, 3 Blackf. 108; Lang v. The State, 3 Blackf. 344; Pearson v. The State, 7 Texas App. 280.

A complaint on a forfeited appearance bond that fails to show that the bond has not been fully discharged states no cause of action. State v. Lagoni, 76 Pacific 1044; Enc. of Plead. & Prac., vol. 14, page 5423, and authorities cited.

### OPINION OF THE COURT.

MANN, J.—The facts and legal questions involved in this case are practically the same as those in cause No. 1145, Territory of New Mexico, appellee, v. M. D. Minter, appelant, decided at the January session of this court, and the opinion filed in said cause No. 1145, is as well applicable to this cause.

The judgment of the court below, is therefore reversed and the cause remanded for further proceedings.

### OPINION OF THE TRIAL JUDGE.

By virtue of Compiled Laws, Section 884, Associate Justice POPE, who tries the case below, files his reasons for his decision in the District Court, being the opinion filed in that court as follows:

## IN THE DISTRICT COURT.
### (Eddy County.)

Territory of New Mexico,
        vs.                 No. 664.
John Mills, et al.

This action is pending upon a demurrer to a complaint on forfeiture of a bail bond. In the case of Territory v. Hemphill, No. 695, Chaves County (decided on appeal by the Supreme Court on Jan. 15th, 1907, under title of Territory v. Minter,) this court has filed an opinion wherein it is held that a suit on a bail bond cannot be maintained unless the latter shows that it was given by one charged with a criminal offense. Does the bond here sued on show that the principal was held for a, criminal offense? The wording of the bond on this point is "to answer unto said court to a charge of holding under herd motherless calves under seven months old." The Statute under which the arrest was made was presumably Chap. 23, Sec. 1, Laws of 1901, which is as follows :

Section 1. That hereafter it shall be unlawful for any person, firm or corporation to hold under herd, confine in any pasture, building, corral or other enclosure, or to picket out, hobble, tie together or in any manner interfere with the freedom of calves of neat cattle or colts of horses, asses and burros which are less than seven months old except such young animals be accompanied by their mothers.

"This provision shall not apply to the calves of milch cows when such cows are actually used to furnish milk for household purposes or for carrying on a dairy; but in every case the person, firm or corporation separating calves from their mothers for either of these purposes shall, upon the demand of any cattle owner, sheriff, inspector or any other officer, produce, in a reasonable time, the mother of each one of said calves so that the interested parties may ascertain if the cow does or does not claim and suckle such calf."

This law was evidently intended for the protection of live stock interests by making it penal for one to herd or otherwise interfere with the freedom of calves under

seven months of age unless accompanied by the mothers. This was not so much for the purpose of preventing cruelty to calves by separation from their mothers as in order that by being required to be with their mothers their ownership might be readily ascertained and crime prevented. This is shown by the latter part of the section where it is provided that where calves are separated from their mothers at places such as dairies the person operating such dairy must, upon reasonable demand, produce the mother, not that the calf may suckle but that "interested parties may ascertain if the cow does or does not claim and suckle such calf." It is in effect a law to prevent theft by penalizing the separation of calves from their mothers. Does it apply to calves who have no mothers? I am impressed with the view that it does not. To hold that it applies to such calves is to impute to the legislators an intent to perpetrate a cruelty. Calves having no mothers are the very ones that need attention, since, if they have no maternal sustenance, they must rely on food contributed from other sources. If, however, it is penal to herd such calf or to picket it or confine it in a pasture, building, corral or other enclosure where it can be fed and looked after, there are only two alternatives, one to kill it or the other to turn it out foodless upon the charity of the world, deprived of all association with other animals should these latter happen to be under herd or in pasture. It could not have been the intention of the legislature to say that if one of a brand of cattle under herd dies, its calf must forthwith be killed or placed in exile from the rest of the herd and from the ministrations of any one, however necessary be the latter. *Cessante ratione, cessat in lex* and upon this principle it is clear to my mind that with the death of the mother no prosecution can be had under this statute for the possession of the calf, although of course such possession, if criminal, can be prosecuted under the general larceny law. Applying these views to the wording of the bond here in controversy it will be noted that the offense named is holding *"motherless calves"* under herd. Conjecturing as to the reason for this phraseology it is not hard to believe that the party who drew

this bond used the word "motherless", not to mean that the mothers were dead but as a short method of expressing the statutory provision that the calves were not "accompanied by their mothers", in other words that they were simply motherless for the time being. If this was the purpose of the language used, it was however very unfortunately chosen. Ordinarily in declaring the effect of language it must be given by the court its customary, usual meaning, and the word motherless as ordinarily understood means not "deprived temporarily of the mother", but means that the mother is dead. And this must be the meaning given here. Viewing the bond in the light of the statute above quoted, it fails to show that it was given by one charged with a criminal offense and the demurrer must be sustained.

An order may be drawn accordingly, with leave to the Territory to amend within five days, in default of which judgment final on the demurrer may be presented.